**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles M. CARBERRY, Appellee,**

**International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO, et al, Defendants,**

**Thomas R. O'Donnell, Appellant.**

**Docket No. 01–6136.**

United States Court of Appeals,
Second Circuit.

Feb. 15, 2002.

Thomas R. O'Donnell, Massapequa, NY, Pro Se.

Charles M. Carberry, Pro Se, Beth E. Goldman, Assistant United States Attorney, New York, NY, for appellee United States of America.

Present POOLER, SOTOMAYOR, Circuit Judges, and GARAUFIS, District Judge.*

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order of said District Court be and it hereby is AFFIRMED.

Thomas R. O'Donnell appeals from an order of the United States District Court for the Southern District of New York that affirmed a disciplinary sanction imposed on O'Donnell by the International Review Board ("IRB").

In 1989, the United States, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America ("IBT"), and certain other parties settled a complaint brought by the United States under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against the IBT and others. In addition to other provisions, the resulting order established the IRB as the body responsible for investigating allegations of wrongdoing by the IBT and its members. After investigating possible malfeasance, the IRB must refer it to the IBT for initial action. However, if the IRB finds "in its sole judgment" that action taken by the IBT is

---

* The Honorable Nicholas G. Garaufis, United States District Court Judge for the Eastern District of New York, sitting by designation.

inadequate, it may convene its own hearing. The IRB's decision after hearing is final but may be reviewed by the United States District Court for the Southern District of New York.

In 1996, O'Donnell ran for vice president at large of the IBT on the "Hoffa Slate." He hired Kevin Currie as his campaign coordinator but later found that Currie had deceived him by falsely denying the existence of any felony convictions. Upset by this deception, O'Donnell decided that he would take revenge by paying Mr. Currie's salary to his wife. Although Mr. Currie continued to act as campaign coordinator, O'Donnell's campaign made eleven checks totaling $12,684.75 payable to Mrs. Currie. Pursuant to IBT rules applicable to the election, each candidate for office had to file periodic Campaign Contribution and Expenditure Reports ("CCERs") listing each contribution and expenditure over $100. On five of these forms, O'Donnell listed Mrs. Currie as the payee of salary actually due to Mr. Currie. He also listed Mr. Currie separately as the payee of various other checks for supplies and campaign materials. In November 1996, O'Donnell fired Mr. Currie who then began to work as campaign coordinator for the Hoffa campaign. The Hoffa campaign also paid Mrs. Currie for Mr. Currie's work and filled out one CCER showing Mrs. Currie as the payee of an amount actually due to Mr. Currie.

In December 1998, the IRB recommended that the IBT bring charges against O'Donnell for bringing reproach on the Union by falsifying his CCERs. After internal proceedings, the IBT fined O'Donnell $6,500.

The IRB found this internal sanction as well as IBT's conclusion that O'Donell acted without intent to deceive to be inadequate. After a hearing, the IRB found that O'Donnell brought reproach upon the IBT by filing CCERs that he knew to be false even though O'Donnell did not intend to conceal Mr. Currie's participation in the campaign. As a penalty, the IRB suspended O'Donnell for nine months during which he was prohibited from obtaining employment, consulting, or other work from any IBT or IBT-affiliated entity.

Both IBT and O'Donnell objected to the IRB's request that the district court affirm the IRB's finding. The district court affirmed the IRB's determination in all respects, and O'Donnell appealed, arguing principally that (1) his CCER reports were true, complete, and accurate and (2) the IRB acted arbitrarily and capriciously by charging O'Donnell based on the CCERs but failing to charge James Hoffa, Jr., with the same offense.

We accord "great deference" to the IRB's findings. *Cf. United States v. IBT (DiGirlamo)*, 19 F.3d 816, 820 (2d Cir. 1994) (according this deference to the IBT's Independent Administrator's disciplinary sanctions). We will set aside the IRB's action only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance of law. *United States v. IBT (Carey & Hamilton)*, 247 F.3d 370, 380 (2d Cir. 2001). We will not disturb factual findings that are supported by substantial evidence. *Id.*

■ O'Donnell first argues that his CCERs were accurate because they truthfully stated that payments were made to Mrs. Currie as salary for the campaign coordinator position. The district court correctly rejected this sophism. Because the CCERs did not report that Mrs. Currie received the payments as a surrogate for her husband, they were substantially and materially false. O'Donnell also contends that everyone in the "Teamster New York world" knew that Mr. Currie was his campaign coordinator, presumably to justify his failure to name Mr. Currie as the real beneficiary of more than twelve thousand dollars in salary payments. Even

accepted as true, this claim does not help O'Donnell because it does not undermine the finding that he falsely reported his campaign expenditures on five CCERS.

■ O'Donnell's claim that the sanction imposed on him was arbitrary and capricious because Hoffa did not receive a like sanction also lacks merit. The IRB has "wide discretion" in imposing sanctions. *United States v. IBT (Giacumbo)*, 170 F.3d 136, 144 (2d Cir.1999). Moreover, "[u]neven application of sanctions does not normally render the sanction imposed in a particular case arbitrary and capricious." *Id.* O'Donnell has identified no reason why his case escapes this general rule, and we find none.